Scott D. St. Marie (SS-1109)
Theodore L. Hecht (TH-5497)
SCHNADER HARRISON SEGAL & LEWIS LLP
140 Broadway, 31st Floor
New York, New York 10005
Tel. No.: (212) 973-8000
Fax No.: (212) 972-8798
E-mail: sst.marie@schnader.com
E-mail: thecht@schnader.com

Attorneys for Plaintiff - Federal Insurance Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

FEDERAL INSURANCE COMPANY,

                Plaintiff,                    07-CV-11095 (JFK) (THK)

     - against -                          <u>AMENDED COMPLAINT</u>

TURNER CONSTRUCTION COMPANY,           ECF CASE

                Defendant.
-------------------------------------------------------------X

        Plaintiff Federal Insurance Company ("Federal"), for its amended complaint herein, alleges as follows:

        1.     Federal is a corporation formed pursuant to the laws of Indiana, and is a citizen of New Jersey, with offices located in Warren, New Jersey.

        2.     Turner Construction Company ("Turner") is a corporation formed pursuant to the laws of New York, with its principal place of business located in New York, New York.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332(a)(1) because there is diversity of citizenship between Federal and Turner, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue in this District is proper pursuant to 28 U.S.C. § 1391(a)(1) and (2) as it is the judicial district where defendant resides and where a substantial part of the events or omissions which give rise to the claim occurred.

## FACTUAL BACKGROUND

5. Federal files this action, pursuant to 28 U.S.C. § 2201, seeking (1) a declaration declaring the rights and legal relations between Federal and Turner in connection with a surety performance bond, and (2) money damages against Turner, as more fully described below.

6. By written agreement dated August 27, 2004, Turner entered into a contract with the New York City Economic Development Corporation ("EDC") in connection with a marine structures project at the New York Cruise Terminal, located on the Hudson River, approximately at 48th Street, in New York City (the "Project").

7. By written agreement dated as of April 5, 2006, Turner entered into a subcontract ("the Subcontract") with Pile Foundation Construction Co., Inc. ("Pile"), pursuant to which Pile undertook to furnish labor and materials ("the Work") on the Project.

8. The Subcontract amount to be paid for Pile's performance was $21,044,180.

9. In connection with the Subcontract, Federal issued a performance bond ("the Performance Bond"), dated April 5, 2006, for the full Subcontract amount. The Performance Bond named Turner as the obligee and Pile as the principal.

10. Pursuant to the Performance Bond, Federal undertook to perform certain obligations of Pile under the Subcontract in the event that Pile was in default, and had been declared to be in default of the Subcontract, conditioned upon Turner's having performed its obligations under the Subcontract.

11. Pile thereafter undertook performance of the Work.

12. On August 22, 2007, Pile, Turner, and the Project Owner, EDC, signed a written modification ("the Modification") of the terms of the Subcontract.

13. The Modification substantially altered material contractual rights and obligations of Turner and Pile under the Subcontract and substituted new rights and obligations, including but not limited to:

(A) The Modification set strict milestone dates for Pile to perform and complete discrete aspects of the Work, under penalty of default;

(B) The Modification required Pile to perform the Work, worth millions of dollars, without any obligation on the part of Turner to make timely payments in accordance with the terms of the Subcontract;

(C) In addition, in contrast to the Subcontract, the Modification, while requiring Pile to perform the Work, allowed Turner to withhold payment for any of

the Work if the Contract was not "registered" by the Comptroller of the City of New York, which registration was contingent upon "(1) resolving to the satisfaction of the Comptroller any issue which may be an impediment to registration, and (2) resolving any issue as may be identified by [the New York City Department of Investigation] and EDC as an impediment to Pile being declared a responsible contractor in connection with the Subcontract;" and

(D)   The Modification also provided that if the Contract was not registered with the Comptroller within ten years of the Modification, Pile waived its right to receive any payment for substantial portions of the Work performed prior to the date of the Modification, and for all of the Work performed after the signing of the Modification, releasing Turner and EDC from all further liability.

14.   At the time the Modification was signed by Turner, Pile, and EDC, Federal was unaware that the Modification had been entered into. At no time did Federal sign the Modification, or otherwise consent to or ratify its terms and conditions.

15.   Federal's obligations under the Performance Bond extend only to the terms of the Subcontract and no further.

16.   Turner and Pile's material modification of the Agreement's payment and performance terms, in substitution for the Subcontract's terms, made without Federal's consent, discharged Federal's obligations under the Performance Bond.

17.   By letter dated September 14, 2007, Turner notified Pile that Pile was in default for failure to achieve one of the milestone dates agreed to in the Modification. The letter attached a copy of the Modification.

18. Turner's September 14, 2007 letter to Pile was improper because, among other things, the milestone date for which Pile was purportedly being held in default had previously been amended to September 21, 2007, and Turner had failed to make payments to Pile which were due and owing under the Subcontract for work performed.

19. By letter the same day, September 14, 2007, Turner notified Federal that Pile had been declared in default, and demanded that Federal remedy the default pursuant to the Performance Bond.

20. By letter dated September 18, 2007, Turner demanded that Pile submit a letter from the U.S. Attorney for the Eastern District of Virginia, stating that Pile was not the subject of a criminal investigation. Turner threatened to terminate the Subcontract, if the U.S. Attorney's letter was not provided by September 21, 2007.

21. Thereafter, by letter dated September 26, 2007, Turner declared the Subcontract terminated and demanded that Federal perform under the Performance Bond.

22. Federal, by letter dated September 28, 2007, advised Turner that (a) the Modification, which was entered into without Federal's consent, constituted a material modification of the underlying Subcontract obligation which was the subject of the Performance Bond, (b) Turner's September 14, 2007 letter, placing Pile in default for failure to achieve the September 14, 2007 milestone date, was improper because the milestone date in question had been amended to September 21, 2007, and (c) Turner's September 18, 2007 letter was improper because, among other things, it threatened to

terminate the Subcontract unless Pile provided a letter, which Pile was not required to, and could not, provide, from the U.S. Attorney for the Eastern District of Virginia.

23. Federal refused to perform under the Performance Bond.

24. As a result of Turner's entering into the Modification with Pile and the EDC, Turner substantially and severely prejudiced and irrevocably harmed Federal's ability to protect its rights and obligations under the Performance Bond.

25. Federal has advised Turner that its termination of the Subcontract was improper and that Federal has no further obligations under the Performance Bond.

## COUNT I

### FEDERAL'S REQUEST FOR A DECLARATION OF FEDERAL'S OBLIGATIONS UNDER THE PERFORMANCE BOND

26. Federal repeats and realleges the allegations in paragraphs 1 through 25 above as if fully set forth at length herein.

27. Federal contends that the Modification was a material modification of the Subcontract and a substitution thereof, and that Federal therefore has been discharged from its obligations under the Performance Bond.

28. Turner contends that Federal's obligations under the Performance Bond have not been discharged.

29. Federal contends that the termination of the Subcontract by Turner was wrongful and constituted a material breach of the Subcontract by Turner.

30. Turner has asserted that the termination was proper and that it has rights against Federal under the Performance Bond.

31. If Federal's obligations under the Performance Bond have been discharged and/or if Turner's termination of the Contract was wrongful, then Federal has no further obligation to Turner under the Performance Bond.

32. If Federal's obligations under the Performance Bond have not been discharged and Turner's termination of the Contract was proper, Federal has certain obligations to Turner under the terms of the Performance Bond.

33. There is, therefore, a substantial controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment concerning the discharge of Federal's obligations under the Performance Bond, the validity of the termination of the Contract, whether it was made with just and proper cause, and whether Federal otherwise has any continuing liability or obligation to Turner under the Performance Bond.

34. Federal requests that the Court issue a declaration that Federal has been discharged from its obligations under the Performance Bond and, alternatively, if not so discharged, that Turner's termination of the Contract by Turner was improper, and that Federal has no continuing liability or obligations to Turner under the Performance Bond.

## COUNT II

35. Federal repeats and realleges the allegations in paragraphs 1 through 34 above as if fully set forth at length herein.

36. By terms of a written assignment dated February 1, 2008 (the "Assignment"), Federal acquired all of Pile's right, title, and interest to moneys payable by Turner in connection with the Project, together with all rights of actions and claims accrued or which may accrue against Turner. (Each of the Assignment's terms and conditions are incorporated herein by reference and alleged as if set forth at length.)

37. Pursuant to the Assignment, Federal is authorized to prosecute the claims against Turner alleged in this Amended Complaint and recover the money damages demanded.

38. Pursuant to the doctrine of equitable subrogation, Federal, as Pile's surety, is subrogated to Pile's rights and has interest and standing to recover Subcontract moneys and claims against Turner.

39. Pile undertook to commence performance of the Subcontract and duly performed all of the conditions on its part to be performed, except as required by Turner to perform in manner and ways other than as contemplated and provided by the Subcontract and except to the extent that Pile was impeded or prevented by Turner's actions and omissions set forth above and hereinafter.

40. On or about September 26, 2007, Turner breached the Subcontract by wrongfully terminating it and by wrongfully excluding Pile from the site of the Project.

41. Between the date of the commencement of the Subcontract and September 26, 2007, Pile performed work and incurred costs in connection with the project, the fair and reasonable value of which is no less than $20,316,297.00, on account

of which Turner has paid the sum of $13,858,830.00, leaving a balance due and owing of no less than $6,457,467.00.

42. By reason of the foregoing, and as a proximate result of Turner's breach of the Subcontracts, Turner is indebted to Federal in the amount of no less than $6,457,467.00 together with interest accrued thereon.

## COUNT III

43. Federal repeats and realleges the allegations of paragraphs 1 through 42 above as if fully set forth herein.

44. After September 26, 2007, Pile incurred damages in an amount in excess of $75,000.00, by reason of the cancellation costs for materials and equipment specially ordered for the Project; and other cancellation costs resulting from breach of the Subcontract by Turner.

45. By reasons of the foregoing, and as a proximate result of Turner's breach of the Subcontract, Turner is indebted to Federal in an amount no less than $75,000.00, no part of which has been paid, together with interest accrued thereon.

## COUNT IV

46. Federal repeats and realleges the allegations of paragraphs 1 through 45 above as if fully set forth herein.

47. During the performance of the Subcontract through September 26, 2007, Pile earned under the Subcontract, and for approved extra work incorporated in

Subcontract supplements, the sum of $19,557,178.00, on account of which Turner has paid the sum of $13,858,830.00, leaving a balance due and owing of $5,698,348.00.

48. By reason of the foregoing, Turner is indebted to Federal in the sum of $5,698,348.00, together with interest accrued thereon.

## COUNT V

49. Federal repeats and realleges the allegations of paragraphs 1 through 48 above as if fully set forth herein.

50. During the course of Pile's performance of the Subcontract, Pile was impeded and obstructed by the wrongful interferences of Turner and extraordinary and unreasonable delays for which Turner is responsible, and which were not within the contemplation of the parties when the Subcontract was entered into.

51. Said interferences and delays resulted from the acts and omissions of Turner which were deliberate, intentional, reckless, grossly negligent, and which constituted bad faith and active interference, including the following:

  (a) Failure to timely or properly furnish access to areas of the site of the Project to Pile;

  (b) Failure to provide scheduling in accordance with the Subcontract;

  (c) Failure to perform work preceding Pile's work in a timely fashion;

  (d) Wrongful and improper actual and constructive directives to Pile to accelerate work under the Subcontract;

(e) Failure to provide a proper design for the work to be performed by Pile;

(f) Failure to make, in a timely manner, payments due and owing under the Subcontract;

(g) Unreasonable and improper work stoppages;

(h) Failure to grant time extensions, pursuant to the Subcontract, for the performance of Pile's work;

(i) Wrongful interference with Pile's contractual relationships with suppliers and vendors;

(j) Unlawful conduct by one or more of Turner's employees and agents and Turner's improper preference shown to other contractors on the Project to the detriment of Pile; and

(k) Wrongful deletion and removal of scope of work.

52. As a result of said interferences and delays, Pile was prevented from performing its work in the reasonable, efficient and continuous and timely manner that it was entitled to perform under the Subcontract and was compelled to perform in costly, disorganized and inefficient ways and sequences, at times and with methods not contemplated by the Subcontract, thereby drastically increasing Pile's costs of performing the work, beyond that contemplated in the Subcontract.

53. By reason of the foregoing and as a proximate result thereof, Turner is indebted to Federal in the amount not less than $6,457,467.00, no part of which sum has been paid, together with interest accrued thereon.

## COUNT VI

54. Federal repeats and realleges the allegations of paragraphs 1 through 53 above as if fully set forth herein.

55. During Pile's performance under the Subcontract, Turner ordered Pile to perform certain work which was extra and additional to the work called for under the Subcontract.

56. Turner refused or otherwise failed to acknowledge that this work was extra and additional to the work called for in the Subcontract, and that Pile was entitled to extra compensation therefor, and failed to issue Subcontract supplements for such work, and failed to make payments to Pile for such work.

57. By reason of the foregoing, Federal is entitled to recover from Turner additional payments in an amount not less than $175,000, no part of which has been paid, together with interest accrued thereon.

## COUNT VII

58. Federal repeats and realleges the allegations of paragraphs 1 through 57 above as if fully set forth herein.

59. Turner wrongfully, without justification or lawful basis, alleged backcharges and deductions against Pile.

60. Turner, in breach of the Subcontract, deducted and wrongfully withheld payments due and owing to Pile in the amount of $1,832,247.52 for work properly requisitioned, invoiced, and performed.

60. By reason of the foregoing, Federal is entitled to payment in the amount of $1,832,247.52, no part of which has been paid, together with interest accrued thereon.

WHEREFORE, plaintiff Federal Insurance Company requests that this Court enter judgment (1) declaring pursuant to its Count I that any and all of Federal's obligations under the Performance Bond have been discharged and Federal Insurance Company has no continuing liability or obligations to defendant Turner Construction Company under the Performance Bond together with such other and further relief as this Court may deem just and proper; and (2) demands judgment on its Count II in the amount of $6,457,467.00; on its Count III in an amount no less than $75,000.00; on its Count IV in the amount of $5,698,348.00; on its Count V in an amount no less than $6,457,467.00; on its Count VI in an amount not less than $175,000.00; and on its Count VII in the amount of $1,832,247.52; together with interest accrued thereon and the costs and disbursements of this action.

Dated: New York, New York
May 7, 2008

SCHNADER HARRISON SEGAL &
LEWIS, LLP

By: _____
Scott D. St. Marie (SS-1109)
Theodore L. Hecht (TH-5497)
Attorneys for Plaintiff
  Federal Insurance Company
140 Broadway, 31st Floor
New York, New York 10005
Tel. No.: (212) 973-8000
Fax No.: (212) 972-8798
E-mail: sst.marie@schnader.com
E-mail: thecht@schnader.com

TO:

Howard M. Rosen (HR-9443)
David Fultz (DF-7233)
PECKAR & ABRAMSON, P.C.
Attorneys for Defendant
  Turner Construction Company
41 Madison Avenue, 20th Floor
New York, New York 10010
Tel. No.: (212) 382-0909
Fax No.: (212) 382-3456
E-mail: hrosen@pecklaw.com
E-mail: dfultz@pecklaw.com