UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

FEDERAL INSURANCE COMPANY,

                                        Plaintiff,

              -against-

TURNER CONSTRUCTION COMPANY,

                                Defendant.

------------------------------------------------------------------------ x

**DECLARATION OF**
**TODD A. KRICHMAR**

Case No.
07-CV-11095(JFK)(THK)

    TODD A. KRICHMAR, an attorney duly admitted to practice before this Court, declares the following to be true and correct under penalty of perjury pursuant to 28 U.S.C. § 1746:

    1.    I am an Assistant Corporation Counsel in the office of Michael A. Cardozo, Corporation Counsel of the City of New York, attorney for the New York City Economic Development Corporation ("EDC"). I am familiar with the facts and circumstances set forth in this Declaration based upon my review of relevant public documents and EDC's books and records, as well as my conversations with EDC employees.

    2.    I submit this Declaration in support of EDC's motion for an Order: (i) pursuant to Rule 24 of the Federal Rules of Civil Procedure, permitting EDC, in its capacity as assignee of the rights of defendant Turner Construction Company ("Turner") under a performance bond issued by plaintiff Federal Insurance Company ("Federal"), to intervene as a defendant in this action; and (ii) granting to EDC such other and further relief as the Court may deem just and proper.

    3.    This diversity action arises from a sub-contractor's default in connection with a major construction project undertaken by EDC at the New York Cruise Terminal on the west side of Manhattan (the "Project").

4. In August 2004, EDC hired Turner as the construction manager for the Project, and Turner in turn entered into a sub-contract with Pile Foundation Construction Co., Inc. ("Pile") for certain marine structures work.

5. In April 2006, Federal, as surety, issued to Pile, as principal, a performance bond (the "Bond") under which Federal guaranteed to Turner, as obligee, Pile's performance under the sub-contract. (Annexed as Exhibit 1 is a copy of the Bond).

6. As a result of Pile's default, in September 2007, Turner terminated the sub-contract, and, in October 2007, demanded that, in accordance with the Bond, Federal remedy the default or complete the work under the sub-contract.

7. After Federal refused Turner's demands, Turner engaged a completion sub-contractor, the cost of which EDC has assumed.

8. Federal commenced this action on December 7, 2007, seeking a judgment declaring that it has no obligations under the Bond.

9. On March 17, 2008, the Court issued a scheduling order (the "Scheduling Order") setting July 1, 2008 as the deadline for joinder of any additional parties and amendment of any pleadings. (Annexed as Exhibit 2 is a copy of the Scheduling Order).

10. In an instrument executed on April 17 and 24, 2008 (the "Assignment"), Turner assigned to EDC all of its rights, remedies and interest in the Bond. (Annexed as Exhibit 3 is a copy of the Assignment).

11. On May 7, 2008, Federal filed an Amended Complaint asserting against Turner additional claims allegedly assigned to Federal by Pile. (Annexed as Exhibit 4 is a copy of the Amended Complaint). Turner answered and asserted counterclaims for a declaration of

Federal's obligations under the Bond, and for damages arising from Federal's breach of those obligations.

        12.     On June 6, 2008, EDC requested a pre-motion conference in connection with EDC's proposed motion to intervene, and the Court directed that a conference be held on June 24, 2008.

        13.     On June 24, 2008, the Court held the pre-motion conference. Because Federal did not consent to EDC's intervention, the Court authorized EDC to make the instant motion.

        14.     Upon information and belief, no discovery demands have been served, or documents exchanged in this action, and discovery is scheduled to continue through April 2, 2009. See Exhibit 2.

        15.     EDC's proposed Answer and Counterclaims of Intervenor-Defendant is annexed as Exhibit 5.

## CONCLUSION

WHEREFORE, EDC respectfully requests that: it be permitted to intervene as a defendant and counter-claimant in this action and file the proposed Answer and Counterclaims of Intervenor Defendant annexed as Exhibit 5, that the caption of this action be amended accordingly to reflect EDC's intervention, and the Court grant to EDC such other and further relief as the Court may deem just and proper.

Dated:      New York, New York
            June 24, 2008

Respectfully submitted,

TODD A. KRICHMAR (TK-0524)

*PILE*

FORM 646 REV 3/98

# PERFORMANCE BOND

Bond # 8204-40-66

KNOW ALL MEN BY THESE PRESENTS; that Pile Foundation Construction
(Name of Subcontractor)

Company, Inc. a NY corporation with

principal offices located at 501 S. Broadway, Ste A, Hicksville, NY 11801 as Principal
(Address)

(hereinafter "Principal"), and Federal Insurance Company as
(Name of Surety)

Surety, a Indiana corporation with offices located at 15 Mountain View Road,
(Address)

Warren, NJ 07061

(hereinafter "Surety"), are held and firmly bound unto TURNER CONSTRUCTION COMPANY, a New York corporation (hereinafter "Obligee"), in the sum of Twenty One Million Forty Four Thousand One Hundred and Eighty 00/100---------- Dollars ($ 21,044,180.00 ) for the payment whereof the Principal and Surety bind themselves, and their respective heirs, administrators, executors, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Principal has by written agreement dated April 5th, 2006 entered

into a Subcontract with Obligee for the performance of Marine Structures work
(Subcontract Work)

for a of

(hereinafter the Subcontract Work), for and at the New York Cruise Terminal
(Project Name)

(hereinafter the "Project") located at 711 12th Avenue, New York, NY 10019
(Address)

in accordance with Drawings

and Specifications prepared by Bermello, Ajamil & Partners Inc. Architects
(Architect/Engineer)

which Subcontract is by reference made a part hereof, and is hereinafter referred to as the "Subcontract".

NOW THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly and faithfully perform said Subcontract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

The Surety hereby waives notice of any alteration or extension of time made by Obligee.

Whenever Principal shall be and declared by Obligee to be in default under the Subcontract,

1

646PRFBD.DOC

FORM 646 REV 1/91

Obligee having performed Obligee's obligations thereunder, the Surety may promptly remedy the default, or shall promptly:

1)   Complete the Subcontract in accordance with its terms and conditions; or

2)   Obtain a bid or bids for completing the Subcontract in accordance with its terms and conditions, and upon determination by Surety of the lowest responsible bidder, or if Obligee elects, upon determination by Obligee and the Surety jointly of the lowest responsible bidder, arrange for a subcontract between such bidder and Obligee, and make available as Subcontract Work progresses (even though there should be a default or a succession of defaults under the subcontract or subcontracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion less the balance of the Subcontract price; but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof. The term "balance of the Subcontract price," as used in this paragraph, shall mean the total amount payable by Obligee to Principal under the Subcontract and any amendments thereto, less the amount properly paid by Obligee to Principal.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than Obligee or the heirs, executors, administrators or successors of Obligee.

IN WITNESS WHEREOF, the Principal and Surety have hereunto caused this Bond to be duly executed and acknowledged as set forth below this ..5th..day of April......., 2006

(Impress Corporate Seal)

Pile Foundation Construction
Company, Inc. .................................;Principal
(Name of Subcontractor /Principal)

ATTEST:

By:................................................
(Officer)

Title.........PRESIDENT.............

(Impress Corporate Seal)

Federal Insurance Company ..........Surety
(Name of Surety)

ATTEST:
See Power of Attorney Attached

By:................................................
(Attorney-in-Fact) Fern Perry

NOTE: An original Power of Attorney bearing same date as Bond must be attached.

2

646PRFBD.DOC

FORM 646 REV 3/98

## ACKNOWLEDGMENT

STATE OF  New York                                    :
                                                      : ss.
COUNTY OF                                             :


On this _5TH_ day of _April_, 2006 , before me
appeared _Anthony Riviera_
.............................................., to me known, who being by me duly sworn, did
depose and say that he resided in
_249 Clark Rd   Mill Neck  N.Y_ ;
that he is the _President_ (Officer) of the corporation described in and which
executed the foregoing    PERFORMANCE BOND    (hereinafter "Instrument") as
Subcontractor/Principal; that he knew the seal of said corporation; that the seal affixed to the
foregoing instrument is the corporate seal of said corporation; and that the foregoing instrument
was signed, sealed and delivered by him on behalf of said corporation by its authority duly given
as the voluntary act and deed of said corporation.

IN WITNESS WHEREOF, the said _Anthony Riviera_(Name of Officer)
has subscribed and sworn to the foregoing oaths before me, and I have hereunto set my hand and
affixed my official seal the day and year first above written.


(SEAL)                                      _____
                                                      Notary Public


My Commission Expires:

SHIH-WEI HSU
NOTARY PUBLIC, State of New York
No. 4983248
Qualified in Westchester County
Commission Expires June 24, _2007._

3

646PRFBD.DOC

## ACKNOWLEDGEMENT OF SURETY

STATE OF NEW YORK,)
COUNTY OF NASSAU,)

ON THE 5th DAY OF April, 2006 , BEFORE ME PERSONALLY CAME Fern Perry TO ME KNOWN, WHO, BEING BY ME DULY SWORN, DID DEPOSE AND SAY THAT (S)HE RESIDES AT Uniondale, NY THAT (S)HE IS THE ATTORNEY-IN-FACT OF Federal Insurance Company THE CORPORATION DESCRIBED IN AND WHICH EXECUTED THE ABOVE INSTRUMENT; THAT (S)HE KNOWS THE SEAL OF SAID CORPORATION; THAT ONE OF THE SEALS AFFIXED TO THE FOREFGOING INSTRUMENT IS SUCH SEAL; THAT IT WAS SO AFFIXED BY ORDER OF THE BOARD OF DIRECTORS OF SAID CORPORATION; AND THAT (S)HE SIGNED HIS/HER NAME THERETO BY LIKE ORDER.

BEVERLY A. WOOLFORD
Notary Public, State of New York
No. 01WO6132857
Qualified in Queens County
Commission Expires August 29, 20 09

Notary Public



| Chubb Surety | POWER OF ATTORNEY | Federal Insurance Company Vigilant Insurance Company Pacific Indemnity Company | Attn: Surety Department 15 Mountain View Road Warren, NJ 07059 |

**Know All by These Presents,** That FEDERAL INSURANCE COMPANY, an Indiana corporation, VIGILANT INSURANCE COMPANY, a New York corporation, and PACIFIC INDEMNITY COMPANY, a Wisconsin corporation, do each hereby constitute and appoint  George O. Brewster, Theresa J. Foley, Gloria Loyd, William A. Marino, Fred Nicholson, Fern Perry, David W. Rosehill, Nancy Schnee, Vincent A. Walsh and David A. Goldstein of Jericho, New York, Joseph J. Mark, Sara Mamrak, Anthony J. DeMartino and John P. Hyland of Somerville, New Jersey

each as their true and lawful Attorney- In- Fact to execute under such designation in their names and to affix their corporate seals to and deliver for and on their behalf as surety thereon or otherwise, bonds and undertakings and other writings obligatory in the nature thereof (other than bail bonds) given or executed in the course of business, and any instruments amending or altering the same, and consents to the modification or alteration of any instrument referred to in said bonds or obligations.

In Witness Whereof, said FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY have each executed and attested these presents and affixed their corporate seals on this  6th  day of  December, 2005



Kenneth C. Wendel, Assistant Secretary

John P. Smith, Vice President

STATE OF NEW JERSEY  ss.
County of Somerset

On this  6th  day of  December, 2005  before me, a Notary Public of New Jersey, personally came Kenneth C. Wendel, to me known to be Assistant Secretary of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY, the companies which executed the foregoing Power of Attorney, and the said Kenneth C. Wendel, being by me duly sworn, did depose and say that he is Assistant Secretary of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY and knows the corporate seals thereof, that the seals affixed to the foregoing Power of Attorney are such corporate seals and were thereto affixed by authority of the By- Laws of said Companies; and that he signed said Power of Attorney as Assistant Secretary of said Companies by like authority; and that he is acquainted with T. W. Cavanaugh, and knows him to be Vice President of said Companies; and that the signature of T. W. Cavanaugh, subscribed to said Power of Attorney is in the genuine handwriting of T. W. Cavanaugh, and was thereto subscribed by authority of said By- Laws and in deponent's presence.

Notarial Seal

KAREN A. EDER
Notary Public, State of New Jersey
No. 2231647
Commission Expires Oct. 28, 2009

Karen A. Eder
Notary Public

## CERTIFICATION

Extract from the By- Laws of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY:

"All powers of attorney for and on behalf of the Company may and shall be executed in the name and on behalf of the Company, either by the Chairman or the President or a Vice President or an Assistant Vice President, jointly with the Secretary or an Assistant Secretary, under their respective designations. The signature of such officers may be engraved, printed or lithographed. The signature of each of the following officers: Chairman, President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary and the seal of the Company may be affixed by facsimile to any power of attorney or to any certificate relating thereto appointing Assistant Secretaries or Attorneys- in- Fact  for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such power of attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding upon the Company with respect to any bond or undertaking to which it is attached."

I, Kenneth C. Wendel, Assistant Secretary of FEDERAL INSURANCE COMPANY, VIGILANT INSURANCE COMPANY, and PACIFIC INDEMNITY COMPANY

(the "Companies") do hereby certify that

(i)    the foregoing extract of the By- Laws of the Companies is true and correct,

(ii)   the Companies are duly licensed and authorized to transact surety business in all 50 of the United States of America and the District of Columbia and are authorized by the U.S. Treasury Department; further, Federal and Vigilant are licensed in Puerto Rico and the U.S. Virgin Islands, and Federal is licensed in American Samoa, Guam, and each of the Provinces of Canada except Prince Edward Island; and

(iii)  the foregoing Power of Attorney is true, correct and in full force and effect.

Given under my hand and seals of said Companies at Warren, NJ this

  

APR 05 2006

Kenneth C. Wendel, Assistant Secretary

IN THE EVENT YOU WISH TO NOTIFY US OF A CLAIM, VERIFY THE AUTHENTICITY OF THIS BOND OR NOTIFY US OF ANY OTHER MATTER, PLEASE CONTACT US AT ADDRESS LISTED ABOVE, OR BY

Telephone (908) 903-3493        Fax (908) 903-3656        e-mail: surety@chubb.com

# FEDERAL INSURANCE COMPANY

## STATEMENT OF ASSETS, LIABILITIES AND SURPLUS TO POLICYHOLDERS

Statutory Basis

### DECEMBER 31, 2004

(in thousands of dollars)

|  | ASSETS |  | LIABILITIES AND SURPLUS TO POLICYHOLDERS |  |
|---|---|---|---|---|
| Cash and Short Term Investments | $ 383,074 | Outstanding Losses and Loss Expenses | $ | 9,939,617 |
| United States Government, State and | | Unearned Premiums | | 3,584,397 |
| Municipal Bonds | 10,946,632 | Reinsurance Premiums Payable | | 466,431 |
| Other Bonds | 2,719,905 | Provision for Reinsurance | | 168,509 |
| Stocks | 643,464 | Other Liabilities | | 1,225,106 |
| Other Invested Assets | 827,529 | | | |
| TOTAL INVESTMENTS | 15,520,604 | TOTAL LIABILITIES | | 15,364,060 |
| Investments in Affiliates: | | | | |
| Chubb Investment Holdings, Inc. | 1,552,797 | Capital Stock | | 20,980 |
| Pacific Indemnity Company | 1,151,862 | Paid - in Surplus | | 3,106,790 |
| Executive Risk Indemnity Inc. | 585,218 | Unassigned Funds | | 4,636,895 |
| Chubb Insurance Company of Europe | 676,261 | | | |
| Great Northern Insurance Company | 254,959 | | | |
| CC Canada Holdings Ltd. | 263,553 | SURPLUS TO POLICYHOLDERS | | 7,764,665 |
| Vigilant Insurance Company | 119,470 | | | |
| Other Affiliates | 292,070 | | | |
| Premiums Receivable | 1,591,736 | | | |
| Other Assets | 1,120,195 | | | |
| | | TOTAL LIABILITIES AND SURPLUS | | |
| TOTAL ADMITTED ASSETS | $ 23,128,725 | TO POLICYHOLDERS | $ | 23,128,725 |

Investments are valued in accordance with requirements of the National Association of Insurance Commissioners. Investments valued at $285,855 are deposited with government authorities as required by law.

State, County & City of New York, – ss:

_____Anna Maria Lovecchio, Assistant Secretary_____ of the Federal Insurance Company being duly sworn, deposes and says that the foregoing Statement of Assets, Liabilities and Surplus to Policyholders of said Federal Insurance Company on December 31, 2004 is true and correct and is a true abstract of the Annual Statement of said Company as filed with the Secretary of the Treasury of the United States for the 12 months ending December 31, 2004.

Subscribed and sworn to before me
this

APR 05 2006

_____
Assistant Secretary

_____
Notary Public

CARL SICILIANO
NOTARY PUBLIC, State of New York
No. 01SI5076300
Qualified in Suffolk County
Commission Expires April 21, 2007

Form 27-10- 0071A  (Rev. 5- 05)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

Federal Insurance Co.

v.

Transcontinental Co.

-------------------------------------------------------X

JOHN F. KEENAN, United States District Judge:

The following operative dates are hereby set as a part of the Court's case management plan:

Any additional joinder of parties by _July 1, 2008_

Any amendment of the pleadings by _July 1, 2008_

Plaintiff's will provide expert reports, if any, to Defendant's by _____

Defendant's will provide expert report s/, if any, to Plaintiff s/ by _____

Replies to any expert reports by _____

Discovery to be complete by _April 2, 2008_

Next conference will be held on _April 7, 2009 — 10:0m_

Discovery supervision will be referred to Magistrate Judge _Katz_

SO ORDERED. _March 17, 2008_

Dated:  New York, New York.

John F. Keenan
JOHN F. KEENAN
United States District Judge

## ASSIGNMENT

This Agreement of Assignment and Acceptance (the "Assignment"), made as of April 17, 2008, by and between the New York City Economic Development Corporation (the "EDC") and Turner Construction Company ("Turner").

WITNESS:

WHEREAS EDC and Turner entered into an agreement under date of August 27, 2004 (the "Consulting Agreement"), whereby Turner agreed to perform construction management services for EDC in connection with the construction of the New York Cruise Terminal, located at Piers 88 and 90, at West 47th to West 53rd Streets in Manhattan, and at the Brooklyn Cruise Terminal, located at Pier 12, in Red Hook, Brooklyn (collectively, the "Project"); and

WHEREAS Turner and Pile Foundation Construction Company, Inc. ("Pile" or the "Subcontractor") entered into a subcontract under date of April 5, 2006 (the "Subcontract"), whereby Pile agreed to perform all labor and furnish all materials necessary to perform the marine structures work at the New York Cruise Terminal Project in accordance with the Project's architects and engineers and the terms and conditions of the Consulting Agreement; and

WHEREAS the Federal Insurance Company ("Federal"), as surety, issued to Pile, as principal, a performance bond dated April 5, 2006 and designated as Bond No. 8204-40-66 (the "Performance Bond"), a true copy of which is annexed hereto as Exhibit A and incorporated by reference herein, whereby Federal guaranteed to Turner, as obligee, the performance of Pile under the Subcontract for the Project; and

WHEREAS Pile, as obligor, delivered the Performance Bond to Turner, as obligee; and

WHEREAS, subsequent to the commencement of the work under the Subcontract, Pile failed to provide sufficient manpower, materials and equipment to prosecute the work diligently, failed to achieve substantial completion of its work by the completion date set in the Subcontract, failed to achieve completion by the milestones established in a memorandum of understanding between Pile, Turner, Federal and EDC dated April 3, 2007 and again failed to achieve the milestones established in a memorandum of understanding between Pile, Turner, Federal and EDC dated August 22, 2007, and

WHEREAS Turner issued to Pile notices of default dated September 14, 2007 and September 18, 2007, and

WHEREAS Pile failed to remedy the defaults set forth in the notices of default; and

WHEREAS Turner provided to Pile, by letter dated September 26, 2007, notification of the termination of the Subcontract; and

WHEREAS, by letters dated October 8, 2007 and October 29, 2007, Turner demanded that Federal remedy Pile's default or complete the work of the Subcontract, but Federal failed and refused to honor its obligations under the Performance Bond, and

WHEREAS Turner thereafter engaged a completion sub-contractor to complete the work required under the Subcontract following the failure of Pile and Federal to do so; and

WHEREAS, as a result of engaging said completion sub-contractor, Turner incurred additional costs and damages which have been or will be reimbursed to Turner by EDC, and

WHEREAS, by summons and complaint dated and filed on December 7, 2007, Federal commenced an action against Turner in the United States District Court, Southern District of New York (the "Court"), Federal Insurance Company v. Turner Construction Company, Case No. 07-CV-11095-JFK (the "Action"), seeking a judgment declaring that, *inter alia*, any and all of Federal's obligations under the Performance Bond have been discharged and that Federal has no continuing liability or obligation to Turner under the Performance Bond; and

WHEREAS Turner, by its attorneys, Peckar & Abramson, P.C., served and filed in the Action an answer dated February 14, 2008, in which it asserted affirmative defenses, and interposed counterclaims for: (i) a declaration that, *inter alia*, Federal is liable to Turner under the Performance Bond for Pile's default and Federal's failure to perform; and (ii) damages arising from said default and failure in an amount to be proven at trial which may exceed $6,000,000.00; and

WHEREAS EDC has agreed to pay to Turner additional costs and damages resulting from Pile's default under the Subcontract and Federal's disclaimer of liability under the Performance Bond; and

WHEREAS, in consideration for the assumption of said costs and damages by EDC, Turner agrees to assign to EDC all of its rights as the obligee under the Performance Bond.;

NOW, THEREFORE, in consideration of the mutual conveyances set forth herein, and for other good and valuable consideration, the parties agree as follows:

1.      Turner assigns to EDC all of Turner's rights, remedies and interest in the Performance Bond, and any cause(s) of action and/or chose(s) in action against Federal and/or

against Pile on connection with the Performance Bond, the Subcontract and/or the Project, including but not limited to the right to settle, compromise, reassign or otherwise dispose of such cause(s) of action and/or chose(s) in action, and to give a release in EDC's name in full discharge of any liability thereunder to or against EDC.

2.    EDC accepts the assignment set forth above.

3.    EDC and Turner shall promptly execute all documents necessary to effectuate the substitution of Turner by EDC, as Turner's assignee, as the defendant in the Action, including, if necessary, a motion pursuant to Rule 25 of the Federal Rules of Civil Procedure and to amend the caption of the Action to reflect this substitution.

4.    Consistent with said substitution of Turner by EDC as Turner's assignee, EDC and Turner and their respective counsel shall promptly execute all documents necessary to effectuate the appearance in the Action of the Corporation Counsel of the City of New York, or other attorneys of EDC's choosing, as counsel of record for defendant EDC, as Turner's assignee.

5.    Notwithstanding such substitution of the defendant in the Action, Peckar & Abramson, P.C. agrees to render any further assistance requested by the Corporation Counsel in connection with the Action; and EDC agrees to pay the reasonable counsel fees incurred by Turner in defense of the Action prior to the substitution and for any such further assistance by Peckar & Abramson, P.C. rendered at the request of the Corporation Counsel.

6       EDC and Turner waive any known conflict of interest regarding the claim

and counterclaims asserted in the Action as of the date of this instrument.

IN WITNESS WHEREOF, the parties hereto have set their respective hands and seals the

day and year first above written.

NEW YORK CITY ECONOMIC
DEVELOPMENT CORPORATION

BY: Mel. Glickman

TURNER CONSTRUCTION COMPANY

BY: Charles F. Murphy

## ACKNOWLEDGMENTS

STATE OF NEW YORK    )

                      s.s..

COUNTY OF NEW YORK  )

On April 17, 2008, before me came _Charles F. Murphy_ to me known, who acknowledged to me that he/she is the _Senior VP or General Manager_ of TURNER CONSTRUCTION COMPANY, and that he/she executed the foregoing ASSIGNMENT in his/her duly authorized corporate capacity.

_____
Notary Public

HOWARD M. ROSEN
Notary Public, State of New York
No. 02RO4649513
Qualified in Westchester County
Term Expires January 31, 20 10

STATE OF NEW YORK    )

                      s.s.:

COUNTY OF NEW YORK  )

On April 24, 2008, before me came _Melin H. lickman_ to me known, who acknowledged to me that he/she is the _Exec. Vice President_ of the NEW YORK CITY ECONOMIC DEVELOPMENT CORPORATION, and that he/she executed the foregoing ASSIGNMENT in his/her duly authorized corporate capacity.

_____
Notary Public

DAVID SHELLEY
Notary Public - State of New York
No. 01SH6122387
Qualified in King County
My Commission Expires February 7, 200 1

Scott D. St. Marie (SS-1109)
Theodore L. Hecht (TH-5497)
SCHNADER HARRISON SEGAL & LEWIS LLP
140 Broadway, 31st Floor
New York, New York 10005
Tel. No.: (212) 973-8000
Fax No.: (212) 972-8798
E-mail: sst.marie@schnader.com
E-mail: thecht@schnader.com

Attorneys for Plaintiff - Federal Insurance Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

FEDERAL INSURANCE COMPANY,

                              Plaintiff,                      07-CV-11095 (JFK) (THK)

           - against -                       AMENDED COMPLAINT

TURNER CONSTRUCTION COMPANY,        ECF CASE

                               Defendant.
-----------------------------------------------------------X

        Plaintiff Federal Insurance Company ("Federal"), for its amended complaint herein, alleges as follows:

        1.       Federal is a corporation formed pursuant to the laws of Indiana, and is a citizen of New Jersey, with offices located in Warren, New Jersey.

        2.       Turner Construction Company ("Turner") is a corporation formed pursuant to the laws of New York, with its principal place of business located in New York, New York.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332(a)(1) because there is diversity of citizenship between Federal and Turner, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.    Venue in this District is proper pursuant to 28 U.S.C. § 1391(a)(1) and (2) as it is the judicial district where defendant resides and where a substantial part of the events or omissions which give rise to the claim occurred.

## FACTUAL BACKGROUND

5.    Federal files this action, pursuant to 28 U.S.C. § 2201, seeking (1) a declaration declaring the rights and legal relations between Federal and Turner in connection with a surety performance bond, and (2) money damages against Turner, as more fully described below.

6.    By written agreement dated August 27, 2004, Turner entered into a contract with the New York City Economic Development Corporation ("EDC") in connection with a marine structures project at the New York Cruise Terminal, located on the Hudson River, approximately at 48th Street, in New York City (the "Project").

7.    By written agreement dated as of April 5, 2006, Turner entered into a subcontract ("the Subcontract") with Pile Foundation Construction Co., Inc. ("Pile"), pursuant to which Pile undertook to furnish labor and materials ("the Work") on the Project.

2

8.    The Subcontract amount to be paid for Pile's performance was $21,044,180.

9.    In connection with the Subcontract, Federal issued a performance bond ("the Performance Bond"), dated April 5, 2006, for the full Subcontract amount. The Performance Bond named Turner as the obligee and Pile as the principal.

10.    Pursuant to the Performance Bond, Federal undertook to perform certain obligations of Pile under the Subcontract in the event that Pile was in default, and had been declared to be in default of the Subcontract, conditioned upon Turner's having performed its obligations under the Subcontract.

11.    Pile thereafter undertook performance of the Work.

12.    On August 22, 2007, Pile, Turner, and the Project Owner, EDC, signed a written modification ("the Modification") of the terms of the Subcontract.

13.    The Modification substantially altered material contractual rights and obligations of Turner and Pile under the Subcontract and substituted new rights and obligations, including but not limited to:

(A)    The Modification set strict milestone dates for Pile to perform and complete discrete aspects of the Work, under penalty of default;

(B)    The Modification required Pile to perform the Work, worth millions of dollars, without any obligation on the part of Turner to make timely payments in accordance with the terms of the Subcontract;

(C)    In addition, in contrast to the Subcontract, the Modification, while requiring Pile to perform the Work, allowed Turner to withhold payment for any of

3

the Work if the Contract was not "registered" by the Comptroller of the City of New York, which registration was contingent upon "(1) resolving to the satisfaction of the Comptroller any issue which may be an impediment to registration, and (2) resolving any issue as may be identified by [the New York City Department of Investigation] and EDC as an impediment to Pile being declared a responsible contractor in connection with the Subcontract;" and

(D)    The Modification also provided that if the Contract was not registered with the Comptroller within ten years of the Modification, Pile waived its right to receive any payment for substantial portions of the Work performed prior to the date of the Modification, and for all of the Work performed after the signing of the Modification, releasing Turner and EDC from all further liability.

14.    At the time the Modification was signed by Turner, Pile, and EDC, Federal was unaware that the Modification had been entered into. At no time did Federal sign the Modification, or otherwise consent to or ratify its terms and conditions.

15.    Federal's obligations under the Performance Bond extend only to the terms of the Subcontract and no further.

16.    Turner and Pile's material modification of the Agreement's payment and performance terms, in substitution for the Subcontract's terms, made without Federal's consent, discharged Federal's obligations under the Performance Bond.

17.    By letter dated September 14, 2007, Turner notified Pile that Pile was in default for failure to achieve one of the milestone dates agreed to in the Modification. The letter attached a copy of the Modification.

4

18.     Turner's September 14, 2007 letter to Pile was improper because, among other things, the milestone date for which Pile was purportedly being held in default had previously been amended to September 21, 2007, and Turner had failed to make payments to Pile which were due and owing under the Subcontract for work performed.

19.     By letter the same day, September 14, 2007, Turner notified Federal that Pile had been declared in default, and demanded that Federal remedy the default pursuant to the Performance Bond.

20.     By letter dated September 18, 2007, Turner demanded that Pile submit a letter from the U.S. Attorney for the Eastern District of Virginia, stating that Pile was not the subject of a criminal investigation.  Turner threatened to terminate the Subcontract, if the U.S. Attorney's letter was not provided by September 21, 2007.

21.     Thereafter, by letter dated September 26, 2007, Turner declared the Subcontract terminated and demanded that Federal perform under the Performance Bond.

22.     Federal, by letter dated September 28, 2007, advised Turner that (a) the Modification, which was entered into without Federal's consent, constituted a material modification of the underlying Subcontract obligation which was the subject of the Performance Bond, (b) Turner's September 14, 2007 letter, placing Pile in default for failure to achieve the September 14, 2007 milestone date, was improper because the milestone date in question had been amended to September 21, 2007, and (c) Turner's September 18, 2007 letter was improper because, among other things, it threatened to

5

terminate the Subcontract unless Pile provided a letter, which Pile was not required to, and could not, provide, from the U.S. Attorney for the Eastern District of Virginia.

23.     Federal refused to perform under the Performance Bond.

24.     As a result of Turner's entering into the Modification with Pile and the EDC, Turner substantially and severely prejudiced and irrevocably harmed Federal's ability to protect its rights and obligations under the Performance Bond.

25.     Federal has advised Turner that its termination of the Subcontract was improper and that Federal has no further obligations under the Performance Bond.

## COUNT I

### FEDERAL'S REQUEST FOR A DECLARATION OF FEDERAL'S OBLIGATIONS UNDER THE PERFORMANCE BOND

26.     Federal repeats and realleges the allegations in paragraphs 1 through 25 above as if fully set forth at length herein.

27.     Federal contends that the Modification was a material modification of the Subcontract and a substitution thereof, and that Federal therefore has been discharged from its obligations under the Performance Bond.

28.     Turner contends that Federal's obligations under the Performance Bond have not been discharged.

29.     Federal contends that the termination of the Subcontract by Turner was wrongful and constituted a material breach of the Subcontract by Turner.

6

30. Turner has asserted that the termination was proper and that it has rights against Federal under the Performance Bond.

31. If Federal's obligations under the Performance Bond have been discharged and/or if Turner's termination of the Contract was wrongful, then Federal has no further obligation to Turner under the Performance Bond.

32. If Federal's obligations under the Performance Bond have not been discharged and Turner's termination of the Contract was proper, Federal has certain obligations to Turner under the terms of the Performance Bond.

33. There is, therefore, a substantial controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment concerning the discharge of Federal's obligations under the Performance Bond, the validity of the termination of the Contract, whether it was made with just and proper cause, and whether Federal otherwise has any continuing liability or obligation to Turner under the Performance Bond.

34. Federal requests that the Court issue a declaration that Federal has been discharged from its obligations under the Performance Bond and, alternatively, if not so discharged, that Turner's termination of the Contract by Turner was improper, and that Federal has no continuing liability or obligations to Turner under the Performance Bond.

<u>COUNT II</u>

35. Federal repeats and realleges the allegations in paragraphs 1 through 34 above as if fully set forth at length herein.

36.    By terms of a written assignment dated February 1, 2008 (the "Assignment"), Federal acquired all of Pile's right, title, and interest to moneys payable by Turner in connection with the Project, together with all rights of actions and claims accrued or which may accrue against Turner.  (Each of the Assignment's terms and conditions are incorporated herein by reference and alleged as if set forth at length.)

37.    Pursuant to the Assignment, Federal is authorized to prosecute the claims against Turner alleged in this Amended Complaint and recover the money damages demanded.

38.    Pursuant to the doctrine of equitable subrogation, Federal, as Pile's surety, is subrogated to Pile's rights and has interest and standing to recover Subcontract moneys and claims against Turner.

39.    Pile undertook to commence performance of the Subcontract and duly performed all of the conditions on its part to be performed, except as required by Turner to perform in manner and ways other than as contemplated and provided by the Subcontract and except to the extent that Pile was impeded or prevented by Turner's actions and omissions set forth above and hereinafter.

40.    On or about September 26, 2007, Turner breached the Subcontract by wrongfully terminating it and by wrongfully excluding Pile from the site of the Project.

41.    Between the date of the commencement of the Subcontract and September 26, 2007, Pile performed work and incurred costs in connection with the project, the fair and reasonable value of which is no less than $20,316,297.00, on account

8

of which Turner has paid the sum of $13,858,830.00, leaving a balance due and owing of no less than $6,457,467.00.

42.    By reason of the foregoing, and as a proximate result of Turner's breach of the Subcontracts, Turner is indebted to Federal in the amount of no less than $6,457,467.00 together with interest accrued thereon.

## COUNT III

43.    Federal repeats and realleges the allegations of paragraphs 1 through 42 above as if fully set forth herein.

44.    After September 26, 2007, Pile incurred damages in an amount in excess of $75,000.00, by reason of the cancellation costs for materials and equipment specially ordered for the Project; and other cancellation costs resulting from breach of the Subcontract by Turner.

45.    By reasons of the foregoing, and as a proximate result of Turner's breach of the Subcontract, Turner is indebted to Federal in an amount no less than $75,000.00, no part of which has been paid, together with interest accrued thereon.

## COUNT IV

46.    Federal repeats and realleges the allegations of paragraphs 1 through 45 above as if fully set forth herein.

47.    During the performance of the Subcontract through September 26, 2007, Pile earned under the Subcontract, and for approved extra work incorporated in

9

Subcontract supplements, the sum of $19,557,178.00, on account of which Turner has paid the sum of $13,858,830.00, leaving a balance due and owing of $5,698,348.00.

48.    By reason of the foregoing, Turner is indebted to Federal in the sum of $5,698,348.00, together with interest accrued thereon.

## COUNT V

49.    Federal repeats and realleges the allegations of paragraphs 1 through 48 above as if fully set forth herein.

50.    During the course of Pile's performance of the Subcontract, Pile was impeded and obstructed by the wrongful interferences of Turner and extraordinary and unreasonable delays for which Turner is responsible, and which were not within the contemplation of the parties when the Subcontract was entered into.

51.    Said interferences and delays resulted from the acts and omissions of Turner which were deliberate, intentional, reckless, grossly negligent, and which constituted bad faith and active interference, including the following:

(a)    Failure to timely or properly furnish access to areas of the site of the Project to Pile;

(b)    Failure to provide scheduling in accordance with the Subcontract;

(c)    Failure to perform work preceding Pile's work in a timely fashion;

(d)    Wrongful and improper actual and constructive directives to Pile to accelerate work under the Subcontract;

10

(e)     Failure to provide a proper design for the work to be performed by Pile;

(f)     Failure to make, in a timely manner, payments due and owing under the Subcontract;

(g)     Unreasonable and improper work stoppages;

(h)     Failure to grant time extensions, pursuant to the Subcontract, for the performance of Pile's work;

(i)     Wrongful interference with Pile's contractual relationships with suppliers and vendors;

(j)     Unlawful conduct by one or more of Turner's employees and agents and Turner's improper preference shown to other contractors on the Project to the detriment of Pile; and

(k)     Wrongful deletion and removal of scope of work.

52.     As a result of said interferences and delays, Pile was prevented from performing its work in the reasonable, efficient and continuous and timely manner that it was entitled to perform under the Subcontract and was compelled to perform in costly, disorganized and inefficient ways and sequences, at times and with methods not contemplated by the Subcontract, thereby drastically increasing Pile's costs of performing the work, beyond that contemplated in the Subcontract.

53.     By reason of the foregoing and as a proximate result thereof, Turner is indebted to Federal in the amount not less than $6,457,467.00, no part of which sum has been paid, together with interest accrued thereon.

11

## COUNT VI

54.    Federal repeats and realleges the allegations of paragraphs 1 through 53 above as if fully set forth herein.

55.    During Pile's performance under the Subcontract, Turner ordered Pile to perform certain work which was extra and additional to the work called for under the Subcontract.

56.    Turner refused or otherwise failed to acknowledge that this work was extra and additional to the work called for in the Subcontract, and that Pile was entitled to extra compensation therefor, and failed to issue Subcontract supplements for such work, and failed to make payments to Pile for such work.

57.    By reason of the foregoing, Federal is entitled to recover from Turner additional payments in an amount not less than $175,000, no part of which has been paid, together with interest accrued thereon.

## COUNT VII

58.    Federal repeats and realleges the allegations of paragraphs 1 through 57 above as if fully set forth herein.

59.    Turner wrongfully, without justification or lawful basis, alleged backcharges and deductions against Pile.

60.    Turner, in breach of the Subcontract, deducted and wrongfully withheld payments due and owing to Pile in the amount of $1,832,247.52 for work properly requisitioned, invoiced, and performed.

12

60.    By reason of the foregoing, Federal is entitled to payment in the amount of $1,832,247.52, no part of which has been paid, together with interest accrued thereon.

WHEREFORE, plaintiff Federal Insurance Company requests that this Court enter judgment (1) declaring pursuant to its Count I that any and all of Federal's obligations under the Performance Bond have been discharged and Federal Insurance Company has no continuing liability or obligations to defendant Turner Construction Company under the Performance Bond together with such other and further relief as this Court may deem just and proper; and (2) demands judgment on its Count II in the amount of $6,457,467.00; on its Count III in an amount no less than $75,000.00; on its Count IV in the amount of $5,698,348.00; on its Count V in an amount no less than $6,457,467.00; on its Count VI in an amount not less than $175,000.00; and on its Count VII in the amount of $1,832,247.52; together with interest accrued thereon and the costs and disbursements of this action.

Dated:    New York, New York
          May 7, 2008
                                SCHNADER HARRISON SEGAL &
                                LEWIS, LLP


                                By: _____
                                   Scott D. St. Marie (SS-1109)
                                   Theodore L. Hecht (TH-5497)
                                   Attorneys for Plaintiff
                                     Federal Insurance Company
                                   140 Broadway, 31st Floor
                                   New York, New York 10005
                                   Tel. No.: (212) 973-8000
                                   Fax No.: (212) 972-8798
                                   E-mail: sst.marie@schnader.com
                                   E-mail: thecht@schnader.com

13

TO:

Howard M. Rosen (HR-9443)
David Fultz (DF-7233)
PECKAR & ABRAMSON, P.C.
Attorneys for Defendant
 Turner Construction Company
41 Madison Avenue, 20th Floor
New York, New York 10010
Tel. No.: (212) 382-0909
Fax No.: (212) 382-3456
E-mail: hrosen@pecklaw.com
E-mail: dfultz@pecklaw.com

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

FEDERAL INSURANCE COMPANY,

Plaintiff,

-against-

TURNER CONSTRUCTION COMPANY,

Defendant,

-and-

NEW YORK CITY ECONOMIC DEVELOPMENT
CORPORATION, as Assignee of Turner Construction
Company,

Intervenor-Defendant.

-------------------------------------------------------------------- x

**INTERVENOR ANSWER
AND COUNTERCLAIMS**

Case No.
07-CV-11095(JFK)(THK)

Intervenor-Defendant, the New York City Economic Development Corporation ("EDC"), as Assignee of Turner Construction Company ("Turner"), by EDC's attorney, Michael A. Cardozo, Corporation Counsel of the City of New York, as and for its Answer to the Amended Complaint of Federal Insurance Company ("Federal"), dated May 7, 2008 (the "Amended Complaint"), alleges as follows:

### EDC'S RESPONSE TO THE ALLEGATIONS IN THE AMENDED COMPLAINT

1. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint.

2. Admits the allegations contained in Paragraph 2 of the Complaint.

3. Admits the allegations contained in Paragraph 3 of the Complaint.

4. Admits the allegations contained in Paragraph 4 of the Complaint.

5.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of the Complaint.

6.      Admits that Turner entered into a written agreement with EDC, dated as of August 27, 2004 (the "Consulting Agreement") in connection with a marine structures project at the New York Cruise Terminal (the "Project"), and refers directly to the Consulting Agreement for its true terms and conditions and incorporates same herein by reference.

7.      Admits that, in connection with the Project, Turner entered into a written agreement with Pile Foundation Construction Company, Inc. ("Pile"), dated as of April 5, 2006 (the "Subcontract"), and refers directly to the Subcontract for its true terms and conditions and incorporates same herein by reference.

8.      Admits the Subcontract was originally valued at $21,044,180.00.

9.      Admits that Federal issued a performance bond, dated April 5, 2006 (the "Bond") in connection with the Subcontract and refers directly to the Bond for its true terms and conditions and incorporates same herein by reference.

10.      Admits that, upon a declared default of Pile, the Bond, among other things, obligated Federal to promptly remedy the default of Pile or promptly complete the Subcontract, and refers directly to the Bond for its true terms and conditions.

11.      Admits that Pile undertook performance of its Sub-contractual obligations before defaulting.

12.      Admits that Pile, Turner and EDC entered into a written confirmation of understanding, dated August 22, 2007 (the "Confirmation") and refers directly to the Confirmation for its true terms and conditions and incorporates same herein by reference.

13.    Denies the allegations contained in Paragraph 13 of the Complaint and refers directly to the Confirmation for its true terms and conditions.

14.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint, except admits that Federal did not sign the Confirmation.

15.    Denies the allegations contained in Paragraph 15 of the Complaint.

16.    Denies the allegations contained in Paragraph 16 of the Complaint.

17.    Denies the allegations contained in Paragraph 17 of the Complaint, except admits that Turner sent a letter dated September 14, 2007 (the "September 14th Letter") to Pile and Federal giving notice of Pile's default, and refers directly to the September 14th Letter for its true terms and meaning and incorporates same herein by reference.

18.    Denies the allegations contained in Paragraph 18 of the Complaint.

19.    Admits the allegations contained in Paragraph 19 of the Complaint.

20.    Denies the allegations contained in Paragraph 20 of the Complaint, except admits that Turner sent a letter to Pile and Federal dated September 18, 2007 (the "September 18th Letter") and refers directly to the September 18th Letter for its true terms and meaning and incorporates same herein by reference.

21.    Admits the allegations contained in Paragraph 21 of the Complaint and refers directly to the September 26th Letter for its true terms and meaning and incorporates same herein by reference.

22.    Denies the allegations contained in Paragraph 22 of the Complaint, except admits that Federal sent a letter to Turner dated September 28, 2007 (the "September 28th Letter") and

refers directly to the September 28th Letter for its true terms and meaning and incorporates same herein by reference.

23.    Admits that Federal failed and refused to perform its obligations under the Bond.

24.    Denies the allegations contained in Paragraph 24 of the Complaint.

25.    Admits that Federal failed and refused to perform its obligations under the Bond.

### EDC'S RESPONSE TO COUNT I

26.    EDC repeats and realleges each and every response set forth in Paragraphs 1 through 25 above as through set forth at length herein.

27.    To the extent the allegations contained in Paragraph 27 of the Complaint require a responsive pleading, they are denied.

28.    Admits the allegations contained in Paragraph 28 of the Complaint, and further alleges that EDC also contends that Federal's obligations under the Performance Bond have not been discharged.

29.    To the extent the allegations contained in Paragraph 29 of the Complaint require a responsive pleading, they are denied.

30.    Admits the allegations contained in Paragraph 30 of the Complaint.

31.    Paragraph 31 of the Complaint states a legal conclusion that does not require a responsive pleading.

32.    Paragraph 32 of the Complaint states a legal conclusion that does not require a responsive pleading.

33.    Paragraph 33 of the Complaint states a legal conclusion that does not require a responsive pleading.

34.    Denies the allegations contained in Paragraph 34 of the Complaint.

-4-

## EDC'S RESPONSE TO COUNTS II THROUGH VII

35.     As EDC intervenes in this action solely with respect to Count I, it makes no response to the allegations contained in paragraphs 35 through 60, while reserving its right to respond to any such allegations as might be subsequently asserted against EDC.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

36.     Pursuant to the express terms of the Bond, Federal waived the right to notice of modification of the Subcontract.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

37.     Federal is barred from the relief sought in the Complaint by the doctrines of waiver and/or estoppel.

## AS AND FOR A FIRST COUNTERCLAIM AGAINST FEDERAL

38.     At all times relevant hereto, EDC was and still is a New York corporation with its principal place of business at 110 William Street, New York, New York.

39.     Upon information and belief, at all times relevant hereto, Federal was and is an Indiana corporation with its principal place of business at 15 Mountain View Road, Warren, New Jersey.

40.     Upon information and belief, Federal is authorized to engage in suretyship and underwriting activities in the State of New York.

41.     The Court has subject matter jurisdiction over this counterclaim pursuant to 28 U.S.C. §1332(a)(1) based upon the diversity of citizenship of the parties and the amount in controversy.

42.     By written agreement dated as of August 27, 2004 (the "Consulting Agreement"), Turner entered into a contract with EDC calling for the provision of construction management

and consulting services in connection with the renovation of certain marine structures at the New York Cruise Terminal (the "Project").

43.    In furtherance of the Consulting Agreement and Project, Turner entered into a subcontract dated as of April 5, 2006 (the "Subcontract"), with non-party Pile Foundation Construction Co., Inc. ("Pile"), pursuant to which Pile agreed to perform certain construction and renovation work at the Project.

44.    In connection with the Subcontract, Federal issued a performance bond, denominated bond number 8204-40-66 and dated April 5, 2006 (the "Bond"), which Bond guaranteed to Turner that Pile would faithfully perform the work required under its Subcontract.

45.    The Bond contains an express provision whereby the surety (i.e., Federal) waives all notice requirements with respect to alterations and time extensions in connection with the Subcontract.

46.    Turner duly performed all obligations under the Subcontract on its part to be performed; however Pile breached the Subcontract by failing to provide sufficient manpower, materials and equipment, failing to diligently prosecute the work, failing to achieve the substantial completion dates set forth in the Subcontract, failing to achieve completion by the milestone dates set forth in a memorandum of understanding between Pile, Turner, Federal and EDC dated April 3, 2007, failing to achieve the milestone dates set forth in the Confirmation, and failing to pay its subcontractors and suppliers amounts it received from Turner for work performed and materials supplied by those subcontractors and suppliers, despite Pile's attestation that such sums had been properly paid.

47.    In accordance with the terms of the Bond, Federal was promptly notified of Pile's defaults under the Subcontract.

48.    As a consequence of Pile's failure to cure its defaults and breaches, Pile's employment under the Subcontract was terminated by letter dated September 26, 2007.

49.    Turner subsequently and repeatedly demanded that Federal fulfill its obligations under the Bond by remedying Pile's default and/or completing Pile's scope of work under the Subcontract.

50.    In an instrument executed on April 17 and 24, 2008, Turner assigned to EDC all of its rights, remedies and interest in the Bond, and any cause(s) and/or chose(s) in action thereunder.

51.    By virtue of that assignment, EDC has become the real party in interest as obligee under the Bond, and as the defendant and counter-claimant in this action.

52.    Turner and EDC have fully complied with all conditions and obligations imposed by the Bond.

53.    Federal has failed and refused to perform its obligations under the Bond, claiming that its obligations thereunder have been discharged by virtue of certain modifications to the Subcontract or, alternatively, that Turner's termination of the Subcontract was improper.

54.    EDC requests that this Court issue a declaration that Federal's obligations under the Bond have not been discharged, that Turner's termination of Pile's Subcontract was proper, and that Federal is liable to EDC for all costs incurred as a consequence of Pile's default and Federal's failure to perform.

## AS AND FOR A SECOND COUNTERCLAIM AGAINST FEDERAL

55.    EDC repeats and realleges each and every response and allegation set forth in Paragraphs 1 through 54 above as through set forth at length herein.

56.    Federal's failure to perform its obligations under the Bond has damaged EDC inasmuch as, among other things, Turner, on EDC's behalf and at EDC's expense, was forced to re-procure the scope of work under Pile's Subcontract at a cost significantly exceeding the Subcontract balance.

57.    As a result of the foregoing, EDC has been damaged in an amount to be proven at trial, but in no event less than $6,000,000.00 plus interest, and is entitled to judgment against Federal therefor.

## JURY TRIAL DEMAND

58.    EDC hereby demands a trial by jury in this action.

**WHEREFORE,** EDC demands judgment as follows:

(i)    dismissing the Complaint in its entirety;

(ii)    on the First Counterclaim against Federal, a declaration that Federal's obligations under the Bond remain in full force and effect, and that Federal is liable to EDC under the Bond for the costs incurred and damages suffered as a consequence of Pile's default and Federal's failure to perform;

(iii)    on the Second Counterclaim against Federal and in favor of EDC, an award of damages in an amount to be proven at trial, but not less than $6,000,000.00, plus interest thereon;

(iv)    an award of costs and disbursements in this action; and

(v)    for such other and further relief as this Court may deem just and proper.

Dated: New York, New York
_____, 2008


MICHAEL A. CARDOZO
Corporation Counsel of the City of New York


By: _____
Todd A. Krichmar (TK-0524)
Attorneys for Intervenor-Defendant
New York City Economic Development Corporation
100 Church Street, Room 3-122
New York, New York 10007
Tel. (212) 676-0750